UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3320-GW-PLAx | Date | December 9, 2022 |
|---|---|---|---|
| Title | *Kristi Parde v. Service Employees International Union, Local 721, et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

None Present   None Present

**PROCEEDINGS:**   IN CHAMBERS - TENTATIVE RULING ON DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6) [58]; ATTORNEY GENERAL'S MOTION TO DISMISS [59]; SEIU LOCAL 721's MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [60]; and DEFENDANT SHERRI R. CARTER'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) OR FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [61]

Attached hereto is the Court's Tentative Ruling on Defendants' Motions [58][59][60][61] set for hearing on December 12, 2022 at 8:30 a.m.

:

Initials of Preparer   JG

*Parde v. Serv. Emps. Int'l Union, Local 721, et al.*, Case No. 2:22-cv-03320-GW-(PLAx)
Tentative Rulings on: 1) Defendant SEIU Local 721's Motion to Dismiss Plaintiff's Second Amended Complaint; 2) Defendant County of Los Angeles' Motion to Dismiss Plaintiff's Second Amended Complaint; 3) Defendant Attorney General Rob Bonta's Motion to Dismiss; and 4) Defendant Sherri R. Carter's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) or Federal Rule of Civil Procedure 12(b)(6)

## I. Introduction

Kirsti Parde, a/k/a Kirsti Edmonds-West ("Plaintiff") filed suit on May 16, 2022 against the Service Employees International Union, Local 721 ("SEIU"); the Superior Court of California, County of Los Angeles ("Superior Court"); Betty T. Yee ("Yee"), in her official capacity as California State Controller; and Rob Bonta, in his official capacity as Attorney General of California ("the Attorney General"). On June 2, 2022, she filed a "Verified Amended Complaint for Declaratory Judgment, Injunctive Relief, and Damages for Violation of Civil Rights. [42 U.S.C. § 1983]" ("AC"). *See* Docket No. 19. The AC dropped Yee as a defendant, added the County of Los Angeles ("LA County") as a defendant, and set forth three counts, for 1) violation of the First Amendment (42 U.S.C. § 1983), 2) violation of due process under the Fourteenth Amendment (42 U.S.C. § 1983), and 3) substantive due process (42 U.S.C. § 1983). On July 22, 2022, Plaintiff filed another version of her Verified Amended Complaint for Declaratory Judgment, Injunctive Relief, and Damages for Violation of Civil Rights. [42 U.S.C. § 1983], which the Court will refer to herein as the "SAC." *See* Docket No. 53. The SAC again contains the same three causes of action as the AC, and it names SEIU, the County and the Attorney General as defendants. Instead of the Superior Court, however, the SAC names as a fourth defendant Sherri R. Carter, in her official capacity as Executive Officer/Clerk of Court of the Superior Court of California, Los Angeles County ("Carter"). As the Court noted previously in this litigation, *see* Docket No. 46, at pg. 2 of 4, in general, the SAC centers on the allegation that the SEIU forged Plaintiff's signature to ensure she stayed a union member despite her resignation from the union, and subsequently continued to deduct union dues from her paycheck following her resignation. *See, e.g.*, SAC ¶¶ 1, 4-7, 22-27, 38-46, 51, 57-63.

Now on-calendar are four motions to dismiss, one filed by each of the four defendants. Although those motions initially presented both Rule 12(b)(1)-based reasons for dismissal and Rule 12(b)(6)-based reasons for dismissal, because of potential factual

1

issues that the Rule 12(b)(1) arguments might raise (which might require some discovery to properly assess), either – with one exception, discussed below – the Defendants have withdrawn those grounds for dismissal or the Court has indicated that it will first address only the Rule 12(b)(6) arguments.  Plaintiff has filed only two Opposition briefs to the four motions – one addressing the "Union Defendants' Motion," which the Court presumes refers only to SEIU's motion, and the other which appears (at least initially) to address only "the Superior Court of California, Los Angeles County" (which is no longer a defendant in the case, such that the Court presumes Plaintiff intends to refer to Carter) and the County, which Plaintiff collectively refers to as "the State Defendants," Docket No. 71, at Caption and 1:3-5.[1]

## II. Applicable Procedural Standard

Under Rule 12(b)(6), the court must: (1) construe the SAC in the light most favorable to Plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  However, Plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases").  The SAC does not "suffice if it tenders

---

[1] As addressed further herein, this second Opposition at times refers to the Attorney General and arguments relevant to that defendant as well.

'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of the motions, the Court is generally limited to the allegations on the face of the SAC (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "[a] court may [also] consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

### III. Discussion

#### A. SEIU

The Rule 12(b)(6) portion of SEIU's motion first concerns the argument that SEIU is not a "state actor" and therefore cannot be liable under 42 U.S.C. § 1983, the source of each of Plaintiff's claims. This is in recognition of the principle that "'[m]ost rights secured by the Constitution are protected only against infringement by governments,' so that 'the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State.'" *Ohno v. Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982)); *see also Lugar*, 457 U.S. at 937 (identifying a "two-part approach," requiring that the deprivation be "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and that "the party charged with the deprivation . . . be a person who may fairly be said to be a state actor"); *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020) ("The Supreme Court has long held that 'merely private conduct, however discriminatory or wrongful,' falls outside the purview of the Fourteenth Amendment.") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

3

More-specifically, SEIU first argues that the claimed Constitutional deprivation did not result from state policy, but from SEIU's breach of a private agreement, the dues authorization agreement between SEIU and Plaintiff. SEIU asserts that, indeed, according to Plaintiff's allegations, SEIU's conduct would have violated state law due to SEIU's failure to inform Plaintiff's employer that Plaintiff had revoked her dues deduction authorization. Second, SEIU's opening brief argues that *Belgau* forecloses any attempt to argue that SEIU is in any sense a "state actor" here.[2]

Plaintiff contends that SEIU, though a private party, is a "state actor" because it acted under color of state law by virtue of California's statutory system reflected in Section 1157.12. Section 1157.12 is what made it possible for SEIU to "use the police powers of the state to access [Plaintiff's] wages *before* she can object." Docket No. 70, at 7:18-19. As she sees it, SEIU did not "misuse" the statute, but in fact "used it correctly." *Id.* at 8:3.

Plaintiff also believes that SEIU qualifies as a state actor because, like in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S.Ct. 2448 (2018), SEIU both used the authority of state law and worked in conjunction with state actors. SEIU's argument that it is not a state actor is thus "unavoidably at odds with the *Janus* decisions," in Plaintiff's view. Docket No. 70, at 9:15-16. The other case law Plaintiff relies upon predominantly (if not entirely) deals – in Plaintiff's own telling of those cases, *see* Docket No. 70, at 9:18-13:20 – with *non-consensual* use of employees' money for union purposes, a union-funding system not in-play here.

In its Reply brief, SEIU directs the Court's attention to two Ninth Circuit decisions issued *after* it filed its motion (but *before* Plaintiff filed her Opposition to SEIU's motion), which it believes completely forecloses Plaintiff's federal claims, including all claims against SEIU: *Wright v. Serv. Emps. Int'l Union Local 503*, 48 F.4th 1112 (9th Cir. 2022), and *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102 (9th Cir. 2022). According to SEIU, these cases specifically do away with Plaintiff's argument – on the merits – that public employers must independently verify the accuracy of a union's certification of employees who have authorized dues deductions before making those deductions. SEIU also argues that state action in cases involving mandatory agency fee payments are

---

[2] While SEIU makes a number of other arguments directed at why it believes Plaintiff's claims fail on their merits – even if it is determined to be a "state actor" – the Court need not reach those arguments on SEIU's motion, as the discussion *infra* demonstrates.

4

irrelevant to situations where the question is whether the state's ministerial role in facilitating the deduction of *voluntary* membership dues makes unions "state actors." *See Belgau*, 975 F.3d at 948 ("Neither are we swayed by Employees' attempt to fill the state-action gap by equating *authorized* dues deduction with *compelled* agency fees.") (emphases added); *id.* at 948 n.3 (distinguishing *Janus* litigation).

The Court's examination of *Wright*, *Ochoa* and *Belgau* confirms the merit of SEIU's "state action" arguments. *Wright* likewise involved an alleged union-membership forgery allegation. *See Wright*, 48 F.4th at 1116. It followed *Belgau* (which did *not* involve a forgery allegation) on the "state action" question, because there were "no meaningful differences between the Washington and Oregon statutory schemes" involved in the two cases, where neither state required state employees to join a union, "both states rely on the union to provide a list of employees who have authorized union dues deductions," and with the states "then deduct[ing] the dues from the employees' salary and remit[ting] them to the union." *Id.* at 1121. Like in *Belgau*, where "the 'source of the alleged constitutional harm' [was] not a state statute or policy but the particular private agreement between the union and Employees," 975 F.3d at 947 (quoting *Ohno*, 723 F.3d at 994), the Ninth Circuit again decided in *Wright* that the union was "not a state actor for purposes of § 1983." *Wright*, 48 F.4th at 1121.

*Wright* explained that the "fraudulent act" of the union's "forgery of her dues authorization agreement" demonstrated "a 'private misuse of a state statute' that is, by definition, 'contrary to the relevant policy articulated by the State,'" meaning that the plaintiff could not identify any "state policy" that would make the union a state actor under Section 1983. *Id.* at 1123 (quoting *Lugar*, 457 U.S. at 940-41); *cf. Ochoa*, 48 F.4th at 1108 (explaining that, *as to private company payroll administrator defendants*, "[t]he cause of [the plaintiff's] alleged constitutional deprivation was the *withholding*, not the union's forgery or its technical mistake, . . . [a]nd the private defendants, as operators of the payroll system, are the ones who carried out the challenged withholding"); *id.* at 1108 n.7. *Wright* also made clear that the state's mere processing of dues deductions was, like in *Belgau*, implementation of a private agreement through the performance of an administrative task, not enough to make the State and the union joint actors for "state actor"/"state action" purposes. *Id.* at 1123-24; *see also Belgau*, 975 F.3d at 948.

Plaintiff has not addressed *Wright*, despite its issuance before she filed her Opposition.[3] She has not explained why, and it is not obvious to the Court why, the statutory scheme at issue here has any meaningful difference from the statutory schemes in Oregon and Washington in *Wright* and *Belgau*. Moreover, the situation here is akin to *Wright*, involving an alleged forgery to an otherwise-consensual union dues authorization agreement, not to *Janus* and cases involving compelled union funding by nonmembers.

Lacking any comment from Plaintiff, despite her opportunity to do so, on the impact of *Wright*, the Court must conclude that SEIU is correct – *Wright*, along with *Belgau*, demonstrate that SEIU is not a "state actor" here. As such, no claims under Section 1983 (such as *all* the claims in the SAC) can be pled against SEIU. Unless Plaintiff can come up with a viable theory for recovery against SEIU at the hearing, the Court likely will dismiss all claims against SEIU without leave to amend.

### B. The County

The County presents three arguments for dismissal here. First, it contends that Plaintiff cannot plead proximate cause as required, because the alleged harm (a forgery) was not foreseeable. *See Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (noting that causation – proximate causation – is an "implicit requirement" in civil rights causes of action); *id.* ("The standard for causation . . . closely resembles the standard 'foreseeability' formulation of proximate cause."); *see also Paroline v. United States*, 572 U.S. 434, 445 (2014) ("Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct."); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("[T]he County could not reasonably have foreseen that Stanewich would become a free-lance criminal and attack the Van Orts as he did. His unforeseeable private acts broke the chain of proximate cause connecting the County's alleged negligence to the Van Orts' injuries."). Second, it argues that Plaintiff cannot plead *Monell* liability because she has not pled ratification by an official with final policy-making

---

[3] Plaintiff's counsel – "Freedom Foundation" – was also appellate counsel in both *Wright* and *Ochoa*. Indeed, Plaintiff directed the Court to certain aspects of *Ochoa*'s case *at the district court level* in her Opposition brief, while also citing a different Ninth Circuit ruling (an unpublished Memorandum Disposition) that issued the same day as the opinions in *Wright* and *Ochoa*. *See* Docket No. 70, at 19 n.2 (citing *Zielinski v. Serv. Emps. Int'l Union Local 503*, No. 20-36076, 2022 WL 4298160 (9th Cir. Sept. 19, 2022)). Clearly, that the Ninth Circuit issued its opinions in *Wright* and *Ochoa* should hardly have caught Plaintiff unawares. The Court would expect an explanation from Plaintiff, at oral argument, as to why Plaintiff's counsel's failed to mention even the existence of *Wright* and *Ochoa* in its briefing.

authority, nor can she show a County policy or custom serving as the moving force/direct causal link, because the County was acting pursuant to a state-law requirement. *See Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) (noting that it is Seventh and Sixth Circuit's position that a county "cannot be held liable under section 1983 for acts that it did under the command of state or federal law," while also noting that the Ninth Circuit has held to the contrary in *Evers v. County of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984); *see also Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) ("Generally, a municipality is liable under *Monell* only if a municipal policy or custom was the 'moving force' behind the constitutional violation[, meaning that] there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'") (quoting *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) and *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (noting that two of the ways to demonstrate municipal liability under *Monell* are to "establish that the individual who committed the constitutional tort was an official with 'final policy-making authority'" or to "prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it"). Third, the County argues that the Eleventh Amendment bars a federal court's consideration of claims that impact how State law is enforced, principally citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), for that proposition. It is not clear that the Court needs to consider anything other than the County's first argument in order to resolve this motion.

As to foreseeability, the County observes that Plaintiff has not alleged that she notified either her employer or the County of any dispute. Plaintiff's response on the foreseeability point appears to be that all that matters is that the County took her money and diverted it to SEIU. Plaintiff asserts that the source of her harm is the terms of Section 1157.12, not a misuse of it, because the deductions could have resulted from an administrative error, not a forgery.

The County views Plaintiff's Opposition as not addressing its proximate cause or Eleventh Amendment arguments at all, but only the issue of *Monell* liability (and the moving force/causal link question underlying that theory generally). *See* Docket No. 73, at 5:5-9. In truth, this is not an unreasonable interpretation of Plaintiff's Opposition. The

7

County argues that, to the extent one might discern *any* response to its proximate cause argument, none of what Plaintiff says in her Opposition responds to the point that if there were any constitutional harm to Plaintiff, it would have been unforeseeable to the County. Indeed, it does not appear that the words "foresee," "foreseeability," "unforeseeable," or "unforeseeability" appear anywhere in Plaintiff's Opposition. The County also emphasizes that Plaintiff has pled forgery, not just as "one theory," but as *the* theory underlying how her signature appeared on the dues-authorization agreement. This, it emphasizes, constitutes an intervening act.

As a result, it appears that Plaintiff has no response to the County's contention that an unforeseeable act of forgery would break the chain of any theory of causation tied to any act by the County. The "administrative error" theory is not present in the SAC. It is unclear how Plaintiff could further amend to make that allegation now without contradicting her forgery contentions. *See* SAC ¶¶ 1, 6, 38-46, 52, 62-63, 78, 87-88, 98, 111. Without need of addressing or resolving the County's other arguments,[4] therefore, it appears that dismissal without leave to amend is warranted here.

### C. Attorney General

The Attorney General presents two different types of arguments: ones aimed at convincing the Court that it may not consider Plaintiff's claims against him at all, and ones aimed at convincing the Court that even if it does consider Plaintiff's claims, they fail. In the first category, the Attorney General argues, by way of Rule 12(b)(1), that any claim for damages against him is barred by sovereign immunity. Beyond that point, he asserts, under Rule 12(b)(6) standards, that Plaintiff cannot plausibly allege state action because what she has alleged is the SEIU's forgery (at most "private misuse of a state statute"), with no allegation that either the Attorney General or any other governmental official had knowledge of the alleged wrongdoing. Further, he argues that the ministerial deduction of

---

[4] The County correctly observes in its Reply that Plaintiff has not addressed the County's Eleventh Amendment argument. While this might ordinarily be a reason to simply consider Plaintiff to have conceded dismissal based at least on that point, the exact nature of the County's argument in this regard is somewhat unclear. The Supreme Court's *Pennhurst* decision states that "a claim that state officials violated *state law* in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." 465 U.S. at 121 (emphasis added). The portion of the decision in *Actmedia, Inc. v. Stroh*, 830 F.2d 957 (9th Cir. 1986), that the County cites in its brief also relates to claims for violations of state law. *See* Docket No. 58, at 17:12-16 (citing *Actmedia*, 830 F.2d at 964). Here, however, the claims are based upon Federal law, not state law.

dues itself – just playing a role in the enforcement of a private agreement – is not state action either (though it is not clear what role the Attorney General has in the ministerial deduction of dues), relying upon *Belgau*.

With respect to the viability of the claims themselves, as to the First Amendment, the Attorney General argues that *Belgau* precludes such a claim, again supporting the view that what Plaintiff has alleged is not harm that flows from the challenged statute, but from an alleged forgery.  In addition, as SEIU itself argued, Plaintiff has not "point[ed] to any action *on the part of a government actor* that required the deduction of dues against her will."  Docket No. 59, at 12:6-7.  With respect to Plaintiff's due process claims, the Attorney General notes that her substantive due process claim is predicated on a First Amendment violation (which fails for the reasons the Attorney General already argued) and, as to procedural due process, there is no deprivation of a liberty or property interest because the statute sets up a system "predicated on consent to withdraw dues," Docket No. 59, at 12:16, while adequate post-deprivation remedies exist (in the form of a lawsuit against SEIU under state law or via an administrative remedy for unlawful labor practices by way of the Public Employees Relations Board), sufficient to prevent such a claim in a situation involving a random, unauthorized act. *See Hudson v. Palmer*, 468 U.S. 517, 536 (1984) (holding that provision of "adequate postdeprivation remedy" prevents violation of Fourteenth Amendment in situation involving intentional deprivation of property by state employee).

In her Opposition to the motion of the "State Defendants," *see* Footnote 1, *supra*, Plaintiff argues that *Belgau* does not apply to her situation because she never signed a membership and dues' authorization agreement, and because her rights were deprived by operation of the system under Section 1157.12, not any agreement or affirmative consent. Whether or not that might have potentially been considered a convincing argument a few months ago, after publication of *Wright* – which indicated that the principles *Belgau* recognized apply even in the context of an alleged forgery – it is not one now.

In response to the sovereign immunity argument, Plaintiff indicates that she may obtain injunctive relief, and that she also seeks nominal damages, which she believes "do not provide any actual monetary compensation barred under the Eleventh Amendment," Docket No. 71, at 24:11-12, and are themselves "a form of prospective relief," *id.* at 24:17-

9

18. As to the nominal damages portion of this argument, she is wrong. *See Platt v. Moore*, 15 F.4th 895, 910 (9th Cir. 2021) ("We note that, 'absent waiver by the State or valid congressional override,' state sovereign immunity protects state officer defendants sued in federal court in their official capacities from liability in damages, including nominal damages.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166-69 (1985)); *Johnson v. Rancho Santiago Cmty. Coll Dist.*, 623 F.3d 1011, 1021 & n.4 (9th Cir. 2010) (indicating that, absent waiver, defendant would have been entitled to sovereign immunity from plaintiffs' claims seeking nominal damages). Although the Attorney General cited both *Platt* and *Johnson* in his motion, Plaintiff ignored them in her Opposition to the "State Defendants" motions, suggesting – as the Attorney General asserts – she has no response to them.

With respect to any portion of her claims that is *not* barred by sovereign immunity, *Wright* instructs that even in the situation where a plaintiff "challenges whether she is a duly authorized union member," there is "no affirmative duty on government entities to ensure that membership agreements and dues deductions are genuine." 48 F.4th at 1125. Plaintiff's First Amendment claim therefore fails in light of *Belgau*'s prior recognition that there is no "First Amendment right to avoid paying union dues," 975 F.3d at 951, and that union-membership/payment setups such as the instant one are distinguishable from the compelled arrangements present in *Janus*.

Her due process claims also fail, under *Ochoa*, because she "has never alleged that [the Attorney General was] even aware that the deductions were unauthorized" and there is no duty "to verify the accuracy of the information provided by the union." 48 F.4th at 1110-11. As *Ochoa* explained, "'[t]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.'" *Id.* at 1110 (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). The Ninth Circuit instructed that the plaintiff had to be able to demonstrate that the defendants – or at least those who were "state actors" – had "engaged in an 'affirmative abuse of power.'" *Id.* (quoting *Daniels*, 474 U.S. at 330). But, it concluded:

> she has not shown that either the State or the private [state-actor] defendants intended to withhold unauthorized dues and thus deprive her of [her liberty interest in not being compelled to subsidize the union's speech, and] she has never alleged that the State or the private defendants were even aware that

10

> the deductions were unauthorized – as she notes, they withheld the dues "based on SEIU 775's representations alone," and they did not know or have any reason to know that those representations were false.

*Id.* Noting that the state statute involved "does not impose a duty on either the State or the private defendants to verify the accuracy of the information provided by the union," the Ninth Circuit concluded that "[t]he defendants' reliance on the union's representations in the mistaken belief that they were accurate does not rise to the level of a Due Process Clause violation." *Id.* 1110-11.

In light of the foregoing, the Court need not consider or resolve the Attorney General's "state action" arguments or the other arguments for why he believes Plaintiff's individual claims cannot succeed. The Court would dismiss the SAC's claims against the Attorney General, and Plaintiff has given the Court no reason to conclude that an opportunity for amendment is warranted.

### D. Carter

In her motion, Carter raises the issue of sovereign immunity under both Rules 12(b)(1) and 12(b)(6), asserting that both damages, and declaratory relief as to past actions, are barred. Plaintiff's Opposition to the "State Defendants" is addressed *supra*. In her Reply, Carter first directs the Court's attention to the Ninth Circuit's recent decisions in *Wright* and *Ochoa*, which she asserts "unequivocally held that government employers are not precluded by the First Amendment or Due Process Clause from relying on information provided by unions as a basis for deducting dues from their employees' pay," and as to which – as the Court has already observed – Plaintiff had no comment in her Oppositions. Docket No. 74, at 1:9-17, 9:12-13. Carter argues in Reply that these two decisions are "squarely on point[] and dispositive of all claims Plaintiff has made against Defendant Carter." *Id.* at 7:18-21. With respect to the issue of nominal damages, Carter argues that "Plaintiff has not cited – and to our knowledge cannot cite – to any case where any court has ever ruled that a state official is potentially liable for nominal damages under the *Ex Parte Young* exception to Eleventh Amendment immunity." Docket No. 74, at 7:3-5. This is an accurate observation, at least with respect to what Plaintiff has/has not cited. Neither sovereign immunity nor *Ex Parte Young* were at all at issue in any of the cases Plaintiff cites on the topic of nominal damages. *See* Docket No. 71, at 24:11-25:5. Merely informing the Court as to what nominal damages *are* is not a convincing point to be made

on this topic.

There is no need to re-create the wheel here. For the same reasons addressed in connection with the Attorney General's motion, a combination of sovereign immunity and the impact of the decisions in *Belgau*, *Wright* and *Ochoa* protects Carter from liability. The Court would grant Carter's motion, likely without leave to amend.

### IV. Conclusion

For the reasons stated above, each of the four pending motions would be granted, without leave to amend. If anything remains of this case following such a decision, the parties should advise the Court at the hearing.